UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARGARET CRUMPTON, on her own behalf
and others similarly situated,

        Plaintiff,

vs.                 Case No.  2:09-cv-680-FtM-29DNF

SUNSET CLUB PROPERTIES, L.L.C., a
foreign limited liability company,
and GARRY OAKES, an individual,

        Defendants.
_____

**OPINION AND ORDER**

This matter is before the Court on a one count Amended Complaint (Doc. #26) alleging a claim for overtime compensation under the Fair Labor Standards Act (FLSA).  In an Opinion and Order (Doc. #50) filed on February 28, 2011, the Court granted summary judgment in favor of defendants as to years 2008 and 2009 because defendant Sunset Club Properties, LLC did not have an annual gross income of at least $500,000 for either year.  The matter came before the Court for a non-jury trial on July 26, 2011, as to year 2007. The Court heard testimony from plaintiff Margaret Crumpton and defendant Garry Oakes, and received three exhibits from plaintiff.  The Court's findings of fact and conclusion of law are set forth below.

**I.**

Defendant Garry Oakes (Oakes) was and is a member of defendant Sunset Club Properties, LLC, a Florida limited liability company

(Sunset Club) (collectively defendants).  During the relevant years of 2007 through 2009, Sunset Club was in the business of leasing residential apartments in Lee County, Florida, and Oakes was the member who oversaw the day-to-day operations of the company. Sunset Club operated eight separate properties containing a total of approximately 242 lower income apartment units.  In 2006, Oakes came to Florida to salvage the apartment buildings from the impact of the real estate slump which had resulted in up to $50,000 per month of negative cash flow.

In November, 2006, plaintiff Margaret Crumpton (Crumpton or plaintiff) and Oakes began communicating through Match.com, and met in person on December 5, 2006.  Beginning December 6, 2006, Oakes moved in with Crumpton and started a romantic relationship, which lasted until December, 2007.  Crumpton worked for Sunset Club from January 1, 2007 through August 20, 2009, although the parties dispute whether this was as an employee or an independent contractor.

Crumpton testified that she worked as the marketing director for Sunset Club.  Crumpton described her job functions as creating and implementing marketing strategies to find tenants for apartments controlled by Sunset Club, training the leasing staff, and identifying when tenants got paid and collecting rents in a timely fashion.  Crumpton testified she also traveled to Ohio with Oakes to train his staff there as to how to better show apartments,

and while in Ohio answered the phone for the Florida office.  It appears that plaintiff utilized defendants' equipment and property, or equipment and property paid for by defendants, in performing her work function as a marketer of apartment units.

Crumpton testified that it was agreed she would be paid a monthly salary plus commissions based on signed leases.  Plaintiff testified that for 2007 she worked an average of 74 hours per week, but was paid a base salary for 40 hours per week.  She arrived at the 74 hour figure by reviewing signed leases with her prior attorney during the pretrial stages of this case.  Crumpton testified that her base salary for 40 hours a week equaled $2,500 a month ($625.00 a week).  Crumpton also testified that she was supposed to receive a commission of $100 for each signed lease she secured, and $200 for each lease she secured for a furnished apartment.  Crumpton would be responsible for furnishing the apartment, but Oakes testified he would assist her in do so.  Plaintiff's answers to Court interrogatories stated she was supposed to be paid $500 a week plus commissions, and was paid on average $642.50 per week.  (Doc. #16-1.)

Oakes testified that Crumpton's main function was to try to rent apartments, which she did as an independent contractor.  Oakes testified that Crumpton would be paid $100 for each signed lease she procured, and $200 if she furnished the apartment.  Oakes testified that initially there was a $2,000 draw against lease

-3-

commissions.  If Crumpton did not rent enough apartments to satisfy the draw amount, she was never required to return any money.  There were times when Crumpton claimed credit for leases which were disputed by Sunset Club office staff, and Oakes would intercede just about every month to tell the office staff to give Crumption credit for the leases.  If Sunset Club did not have an apartment the person wanted, Crumpton could take the person to another apartment complex, and be paid a referral fee from those complexes. Crumpton would give the referral check to Sunset Club, and receive half of the amount back from Sunset Club.  Oakes testified he took Crumpton to his office in Ohio, and introduced her to his people in the office.  Crumpton got together with his Ohio leasing person to exchange tips on leasing and receive training from the Ohio person.

Both parties testified that Sunset Club's property manager Lori fired Crumpton for about six weeks in late 2007 after difficult personnel relationships.  Despite the "firing," Oakes kept Crumption working under the same arrangements for the company but had her avoid going to the office.

Defendant estimated that for part of 2007 plaintiff worked an average of 40 to 50 hours per week, and less than that at other times in 2007.  Neither party kept or produced any records concerning the nature of the employment relationship, the number of hours plaintiff worked, or the amount of money she was paid. There was no written employment agreement with Crumpton.  Money paid to

Crumpton was reflected for tax purposes on 1099 forms, not W-2 forms.

## II.

The FLSA requires covered "employers" to pay overtime wages once "employees" exceed forty hours of work in a given week. With exceptions not at issue in this case,

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The statute defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In turn, the FLSA broadly defines "to employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), and an "employer" as "any person acting. . . in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). An entity "suffers or permits" an individual to work if, as a matter of economic reality, the individual is dependent on the entity. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Aimable v. Long & Scott Farms, Inc., 20 F.3d 434, 439 (11th Cir. 1994).

## A.  Employee or Independent Contractor

Defendants assert that plaintiff was an independent contractor, and as such was not covered by the overtime provisions

of the FLSA.  A determination of employment status under the FLSA is a question of law.  <u>Antenor v. D & S Farms</u>, 88 F.3d 925, 929 (11th Cir. 1996).

If plaintiff is an independent contractor, she does not fall within the scope of the FLSA.  <u>Weisel v. Singapore Joint Venture, Inc.</u>, 602 F.2d 1185, 1188 (5th Cir. 1979).  To determine whether Crumpton was an employee or an independent contractor, the Court must look to the economic realities of the situation.  <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 728 (1947).  The Eleventh Circuit has identified several factors to guide this inquiry in an FLSA case:  (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business.  <u>Freund v. Hi-Tech Satellite, Inc.</u>, 185 F. App'x 782, 783 (11th Cir. 2006).  "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor -- economic dependence."  <u>Id.</u> at 783 (citation omitted).

While the factors in this case do no all point in the same direction, the Court concludes that the evidence presented to it at trial is sufficient to establish that plaintiff was an employee and not an independent contractor.  The services rendered by Crumpton were an integral part of Sunset Club's business, and were particularly important given Oakes' efforts to salvage the company from the real estate downturn.  The business relationship had a reasonable degree of permanency and lasted for two and one-half years.  Plaintiff brought a skill set to the job which appears to have been as successful as the economic climate allowed, and certainly brought an intensity which benefitted Sunset Club. Although the testimony was not entirely clear, it appeared that Crumpton mainly used equipment and items owned or provided by Sunset Club to perform her job.  Crumpton had the opportunity for extra income based upon her success in the form of commissions. Sunset Club had very little control over Crumpton's day to day work performance.  The Court finds that the economic realities of the situation favors the view that plaintiff was an employee of Sunset Club.  As such, the FLSA applied to the relationship.

**B.   Statute of Limitations**

If an infraction of the FLSA is not willful, a two-year statute of limitations applies. See 29 U.S.C. § 255(a). In McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988), the Supreme

Court defined willful violations as those where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. at 133.  It is clear to the Court that the business relationship between Sunset Club and Crumpton was complicated from the beginning by the romantic relationship between Oakes and Crumpton.  Sunset Club reported money paid to Crumpton on a 1099 form from the beginning, and the mixed factors discussed above convince the Court that the infraction was neither willful or done with reckless disregard. For this reason the two year statute of limitations applies. Plaintiff filed her Complaint on October 15, 2009, and therefore plaintiff may seek damages from October 15, 2007 through December 31, 2007.

## C. Unliquidated Damages

Where the employer fails to submit accurate records, the employee need only show she has in fact performed work for which she was improperly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. Brock v. Norman's Country Market, Inc., 835 F.2d 823, 828 (11th Cir. 1988) (citations omitted).  Upon such showing, the burden "shifts to the employer to prove its claim or disprove the employee's, and upon failing to do so, the court can award damages to the employee even if the result is only approximate."  Etienne v. Inter-County Sec. Corp., 173 F.3d 1372,

1375 (11th Cir. Apr. 30, 1999), modified, 1999 U.S. App. LEXIS 12080 (June 11, 1999)(citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946)).  Where an employer has not kept adequate records of its employees' wages and hours, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946), superseded by statute on other grounds, Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1344 n.6 (11th Cir. 2007).

Neither side produced any records documenting the number of hours plaintiff worked between October 16, 2007 and December 31, 2007.  Both witnesses had ample reason to shade their testimony concerning the number of hours Crumpton worked.  Reasonable inferences from the credible evidence convince the Court that a reasonable estimate of the hours plaintiff worked during this time period was somewhere between the 50 hours Oakes estimated as a high end and the 74 hours plaintiff estimated as the consistent average. The Court finds that Crumpton has established by a preponderance of the evidence that she worked on average 60 hours per work week between October 16 and December 31, 2007.

The FLSA normally requires eligible employees to be compensated at one and one-half their hourly wages for overtime hours worked. 29 U.S.C. § 207(a)(1). Where certain conditions are

met, however, the rate is reduced to "half time" pursuant to what is referred to as the "fluctuating workweek" method. Garcia v. Port Royale Trading Co. Inc., 198 F. App'x 845, 845-46 (11th Cir. 2006); 29 C.F.R. § 778.114. The fluctuating workweek method is to be used when "there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." Id. § 778.114(a). Under this kind of compensation structure, the salary "is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek." Id. Thus, regardless of the fluctuating nature of the hours an employee may work, the salary is intended to pay for all hours worked. E.g., Clements v. Serco, Inc., 530 F.3d 1224, 1230-31 (10th Cir. 2008).

The Court finds that it was the clear mutual understanding of the parties that the fixed monthly salary of $2,000 plus commissions was compensation for whatever number of hours were worked each workweek. Therefore, plaintiff is entitled to an additional half-time amount for the hours she worked over forty hours per work week.

There are eleven work weeks between October 15, 2007 and December 31, 2007. Assuming the average weekly rate of pay of $642.50, divided by a 60 hour workweek, Crumpton received $10.71 an

hour.  The half-time rate ($5.36) multiplied by the 20 hours worked over the 40 hour workweek comes to an additional $107.10 per week. Therefore, the eleven weeks at issue, Crumpton is entitled to $1,178.10, plus an equal amount in liquidated damages.

## D.  Liquidated Damages

An employer who violates the overtime provisions of the Fair Labor Standards Act "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  If the employer shows that the "act or omission . . . was in good faith and that [defendant] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]", the Court may award no liquidated damages.  29 U.S.C. § 260.  "An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was 'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'"  Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir. 1987)(citations omitted). "Thus, the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith.  In other words, liquidated damages are mandatory absent a showing of good faith."  Id. (citation omitted).

Although defendants pled in their First Affirmative Defense (Doc. #29) that they acted in good faith and within reasonable grounds, the Court finds that defendants did not meet the burden at trial.  Therefore, plaintiff will be awarded liquidated damages.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  The Court finds plaintiff was an employee; that defendants did not act with willful or reckless disregard; plaintiff is limited to damages sustained between October 15, 2007 through December 31, 2007; and plaintiff is entitled to half-time pay for the hours worked in addition to the regular 40 hours in the workweek.

2.  The Clerk shall enter judgment in favor of plaintiff and against defendants, jointly and severally, awarding plaintiff $1,178.10 in unpaid unliquidated overtime compensation, plus $1,178.10 for liquidated damages, for a total of $2,356.20.

3.  The Clerk is further directed to terminate all deadlines and motions, and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___1st___ day of August, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Parties of record

-12-